*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

1618 SOUTH WASHINGTON, LLC, and ANTONE HADDAD,

        Plaintiffs-Appellants,

v

G & G CAPITAL, LLC, VINCENT GENTILOZZI, and BRANDON DAVIS,

        Defendants-Appellees.

UNPUBLISHED
April 16, 2025
9:17 AM

No. 365402
Ingham Circuit Court
LC No. 21-000273-CB

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

PER CURIAM.

Plaintiffs, 1618 South Washington Square, LLC, and Antone Haddad, appeal by right the trial court's order dismissing their claims against defendants, G & G Capital, LLC, Vincent Gentilozzi, and Brandon Davis, under MCR 2.504(B)(1) (refusal to comply with a court order).[1] We affirm.

## I. BACKGROUND

In September 2018, plaintiffs and Davis entered into an "agreement for sale of real estate" to be secured by a down payment, promissory note, and land contract. In his deposition, Davis testified that the agreement included a balloon payment after one year, in 2019. He contended that because plaintiffs did not make the payment, it voided their land contract with him. According to Davis, plaintiffs kept asking for more time, and he allowed the plaintiffs to occupy the property while making payments. In March 2020, Davis informed plaintiffs of the total payoff amount of the contract remaining, including the balloon payment still due. The parties do not dispute that plaintiffs did not pay the full amount due.

---

[1] Davis was defaulted early in the proceedings. Consistent with the lower-court record, defendants G & G Capital and Gentilozzi will be referred to as "defendants" unless more specificity is needed.

In November 2020, Davis and the Gentilozzi defendants entered into a purchase agreement, and pursuant to the agreement Davis ultimately conveyed, by warranty deed, the property to G & G Capital. Davis also testified that he was comfortable doing so because plaintiffs' failure to make the balloon payment had voided the plaintiffs' sales agreement with him. After the sale, the Gentilozzi defendants sent plaintiffs a notice to quit and vacate the property.

Plaintiffs filed this suit in April 2021, seeking to quiet title to the property on the basis that they had a land contract with Davis. Plaintiffs attached the agreement for sale of real estate to their motion, but they did not include the promissory note or land contract. Because plaintiffs did not provide a land contract to support their motion, the trial court denied plaintiffs' request for preliminary injunctive relief, which would have allowed plaintiffs to continue to occupy the property. The trial court gave plaintiffs 14 days to remove their personal property from the building. The trial court extended the deadline until it ordered, on October 5, 2021, that plaintiffs had 14 days to remove their personal property from the building. The trial court's order explicitly prohibited plaintiffs from removing racks or fixtures, and plaintiffs were ordered to leave the property "clean."

In November 2021, defendants requested civil-contempt sanctions against plaintiffs on the basis that they had violated the October 5, 2021 order. Following a show-cause hearing, at which Gentilozzi testified about the items plaintiff Haddad had removed from the building, the costs to replace the items, and the costs to clean the premises, the trial court found Haddad in civil contempt of court and ordered plaintiffs to pay the Gentilozzi defendants the $45,913.08 cost to replace the improperly taken items and to clean the property. The trial court ordered plaintiffs to pay within 60 days. In October 2022, defendants requested a show-cause hearing on the basis that plaintiffs had not complied with the trial court's contempt sanctions. Subsequently, the trial court found that plaintiffs' violations of the court's orders were repeated and willful, and it determined that no lesser sanction other than dismissal of plaintiffs' cause of action was appropriate. Thus, the trial court then dismissed plaintiffs' entire case, which encompassed all of their claims against Gentilozzi and Davis. This appeal followed.

On appeal, plaintiffs argue that the trial court's determination that the purchase agreement with Davis was not a land contract is erroneous, and plaintiffs raise several additional arguments relating to that contention. However, because the trial court ultimately dismissed plaintiffs' case because they failed or refused to comply with the court's orders, and the trial court did not err by doing so, the majority of the issues plaintiffs raised on appeal are moot and we need not consider them.

II. STANDARDS OF REVIEW

This Court "review[s] for an abuse of discretion the trial court's decision to dismiss an action." *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 487; 997 NW2d 307 (2022). A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable outcomes. See *id*. This Court reviews for clear error the factual findings underlying the trial court's decision. *Id*. A finding of fact is clearly erroneous if, giving deference to the trial court's credibility determinations, no substantial evidence supports the finding or this Court has the definite and firm conviction that the lower court made a mistake. *Miller-Davis Co v Ahrens*

*Constr, Inc*, 495 Mich 161, 173; 848 NW2d 95 (2014). This Court reviews de novo whether an issue is moot. *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019).

## III. ANALYSIS

"Trial courts possess the inherent authority to sanction litigants and their counsel, including the right to dismiss an action." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). This authority is a type of clean-hands doctrine that applies to protect the parties and the court. *Id*. at 389. Consistent with this inherent authority, our court rules provide that a court may dismiss an action when a party fails to comply with a court order:

> If a party fails to comply with these rules or a court order, upon motion by an opposing party, or sua sponte, the court may enter a default against the noncomplying party or a dismissal of the noncomplying party's action or claims. [MCR 2.504(B)(1).]

However, dismissal is "a drastic step that should be imposed with caution." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 314; 14 NW3d 472 (2023). Before dismissing a case, the trial court should consider factors including

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Gueye*, 343 Mich App at 490 (quotation marks and citation omitted).]

When making findings regarding whether dismissal is an appropriate sanction, the trial court is "in a superior position to judge the weight and credibility of the evidence before it at the hearing . . . ." *Tolas Oil*, 347 Mich App at 318.

## A. THE TRIAL COURT'S USE OF ITS CONTEMPT POWER

First, plaintiffs argue that the trial court erred by dismissing their case because the court improperly used its contempt power to enforce a monetary debt that plaintiffs owed to defendants and this is contrary to the typical application of MCL 600.1701(e). However, plaintiffs' argument improperly conflates the issues of the initial contempt holding, the implementation of sanctions, and the trial court's ultimate dismissal of plaintiffs' case.

MCL 600.1701 provides, in pertinent part:

> The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:

> \* \* \*

(e) Parties to actions, attorneys, counselors, and all other persons for the nonpayment of any sum of money which the court has ordered to be paid.

* * *

(g) Parties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court.

Plaintiffs' argument that MCL 600.1701 generally has not been used to enforce monetary debts relies on 1 Longhofer, Mich Court Rules Practice (7th ed), § 3606.1, p 200, which cites MCL 600.1701 and states that "[u]nder clause (e) failure or refusal to pay money which the court has ordered to be paid cannot be punished by contempt proceedings, except where execution cannot be awarded by law." However, this was not the basis of the trial court's dismissing plaintiffs' case.

"Generally, this Court considers a court's statements in context and in the context of the issues raised by the parties." *Graziano v Brater*, 342 Mich App 358, 367; 994 NW2d 521 (2022). The trial court rejected plaintiffs' argument that its dismissal decision was based on its having ordered Haddad to pay money. Rather, the court expressly based its decision on Haddad's refusal to comply with an order finding him in contempt of court. The trial court repeatedly noted that Haddad ignored and refused to comply with the court's orders. It explicitly stated that the issue before it was the "failure to comply with a court order, court orders, with a plural, repeatedly under MCR 2.504(b)(1)." Reading the trial court's ruling in its proper context, plaintiffs' argument that the trial court incorrectly applied MCL 600.1701(e) does not support reversal because it does not address the court's reasoning for the dismissal.[2]

Plaintiffs also argue that the trial court failed to consider whether lesser sanctions would have been more appropriate than dismissal, such as placing Haddad on a payment schedule. We also reject this argument because the trial court in fact extensively considered whether lesser

---

[2] We also note that the trial court did not, as plaintiffs claim, support its initial decision to sanction plaintiffs with MCL 600.1701(e). Rather, the court sanctioned plaintiffs under MCL 600.1701(g) for disobeying a lawful order of the court.

Plaintiffs also contend the trial court erred in its determination that Haddad willfully violated the court's orders because the court refused to consider his inability to pay the contempt sanction. However, plaintiffs have abandoned this argument by failing to support it with any briefing. "A party may not merely announce a position and leave this Court to discover and rationalize the basis for the claim." *In re Bell*, 341 Mich App 596, 602-603; 991 NW2d 251 (2022) (quotation marks and citation omitted). Plaintiffs' argument on appeal regarding the lack of willfulness of Haddad's violation of the court's orders is entirely unaccompanied by any statement of law or legal analysis. Thus, we deem it abandoned for lack of legal support.

Regardless, plaintiffs have not established any entitlement to reversal because the trial court accepted plaintiffs' counsel's offer of proof before issuing its ruling. Therefore, any error in refusing to allow Haddad to testify about his financial circumstances would be harmless because it would not affect the outcome of this case. See MCR 2.613(A); *Ellison v Dep't of State*, 320 Mich App 169, 179; 906 NW2d 221 (2017).

-4-

sanctions would be appropriate. The trial court expressly stated that whether a lesser sanction would be appropriate was the most important factor for it to consider. It reasoned that it previously had found Haddad in contempt of court, and it determined that an intermediate sanction, such as precluding Haddad from presenting evidence, was not possible. The trial court concluded that "there is nothing the Court can do to get Mr. Haddad to comply with the order of the Court." Further, it found that Haddad simply ignored the court's order instead of requesting relief, such as additional time or a payment schedule. Thus, the record does not support plaintiffs' argument that the trial court did not consider whether lesser sanctions would be appropriate.

## B. CONSIDERATION OF DISMISSAL FACTORS

Plaintiffs next argue that the circumstances of this case do not justify dismissal under the trial court's inherent authority because Haddad only failed to pay the contempt sanction for 97 days, and his failure to pay was irrelevant to his claims. Plaintiffs' argument appears to concern the general balancing of the dismissal factors.

First, the trial court considered whether plaintiffs' violations were willful or accidental. *Gueye*, 343 Mich App at 490. Here, the trial court found that Haddad's violations were willful, and its findings were not clearly erroneous. The trial court denied plaintiffs' request for a preliminary injunction and ordered plaintiffs to remove their personal property within 14 days of the entry of the August 4, 2021 order. Plaintiffs did not move to stay the proceedings pending appeal but instead asked that the order "be stayed until the issue of ownership and possession of this real property properly has been determined." The trial court noted as much when it denied plaintiffs' motion. Then, this Court denied plaintiffs' application for leave to appeal on August 18, 2021, *1618 South Washington, LLC v G & G Capital, LLC*, unpublished order of the Court of Appeals, entered August 18, 2021 (Docket No. 358182), and on August 19, 2021, plaintiffs filed an emergency motion to extend the deadline to remove the personal property.

On October 5, 2021, the trial court granted plaintiffs an additional 14 days to remove their personal property, but it also ordered that plaintiffs were not to remove items including "all the racks and other fixtures in the building . . . ." At the contempt hearing, Haddad admitted that he removed the racks and a disconnected ventilation system. As a result, the trial court found that Haddad had violated the parties' agreement concerning the air-handling equipment and racks, and it ordered him to pay $45,913.08 to the Gentilozzi defendants within 60 days. However, by November 30, 2022, plaintiffs took no actions to pay the sanction or to arrange for its payment.

Viewing this evidence in a light most favorable to plaintiffs, we are not definitely and firmly convinced that the trial court made a mistake when it found that plaintiffs had willfully refused to comply with the court's orders.

The trial court next considered plaintiffs' history of refusing to comply with the court's prior orders, *Gueye*, 343 Mich App at 490, and it determined that Haddad had a history of refusing to comply with the court's orders. Again, we conclude that the trial court did not clearly err given plaintiffs' history of blatant non-compliance with the trial court's orders.

Next, in its analysis, the trial court considered the prejudice caused to the opposing party. *Id*. The trial court found that Gentilozzi had been prejudiced by not being paid for items that

plaintiffs wrongfully had taken. The record supports this finding. The 8,400-square-foot building historically had been used to store goods. Defendants specifically had requested that plaintiffs be ordered to not remove racks or other fixtures from the building, and the trial court issued an order consistent with that request. Davis ultimately conveyed the property to G & G Capital for $58,395, and notably, the lowest quote to replace the racks plaintiffs removed was $36,371.72, more than half of the total value of the property. Considering the historic use of the property as a warehouse space and the cost of the racks relative to the total value of the property itself, the trial court did not clearly err when it found that Gentilozzi had been prejudiced.

The trial court next stated that the sanctions it imposed were "not about delay." See *id*. The trial court's contempt order required plaintiffs to pay $45,913.08 to replace the wrongfully taken property and to cure plaintiffs' violation of the court's order and, the court found, that plaintiffs had "wholly violated the order and refused to pay the money." *Id*. Although plaintiffs fault the trial court for not setting up a payment plan, plaintiffs have provided no authority to support that it was the court's responsibility to do so rather than plaintiffs' responsibility to request such a plan or extension. Again, this portion of the trial court's finding was not clearly erroneous as plaintiffs failed to even remotely comply or attempt to comply with the court's orders. Finally, a lesser sanction would not better serve the interests of justice. *Id*.

After considering all of the relevant factors, we conclude that the trial court's decision does not fall outside the range of reasonable outcomes. Throughout this matter, plaintiffs repeatedly failed to comply with, or outright violated, the court's orders. Plaintiffs violated an order to not remove specific property, and after the trial court ordered plaintiffs to pay the Gentilozzi defendants to replace the wrongfully removed property, plaintiffs did not take any steps toward payment. In light of plaintiffs' repeated violations of the trial court's orders and the lack of less-serious sanctions available to the court, it was reasonable for the court to impose the harsh sanction of dismissal.

## C. PLAINTIFFS' CLAIMS AGAINST DEFENDANT DAVIS

Plaintiffs also argue that the trial court erred by also dismissing plaintiffs' claims against Davis, who was a defaulted party at the time of the court's ruling. The record does not support plaintiffs' argument that they had no notice that their claims against Davis might be dismissed, and we conclude that the trial court did not abuse its discretion when using its inherent authority to sanction plaintiffs for misconduct by dismissing plaintiffs' entire case.

As noted, the court's inherent authority to sanction litigants is related to the clean-hands doctrine:

> The authority to dismiss a lawsuit for litigant misconduct is a creature of the clean hands doctrine and, despite its origins, is applicable to both equitable and legal damages claims. The authority is rooted in a court's fundamental interest in protecting its own integrity and that of the judicial process. The clean hands doctrine applies not only for the protection of the parties but also for the protection of the court. [*Maldonado*, 476 Mich at 389 (quotation marks and citations omitted).]

The clean-hands doctrine provides that "one who seeks the aid of equity must come in with clean hands." *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 463; 646 NW2d 455 (2002) (quotation marks and citation omitted). A plaintiff who has acted in bad faith regarding a matter is not entitled to relief, even if the defendant acted improperly. See *id*.

The Michigan and United States Constitutions provide in part that no person shall be deprived of property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Due process requires that a party be given notice and a meaningful opportunity to be heard. *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). The record does not support plaintiffs' argument that they were not given notice that their entire case could be dismissed. In their motion to show cause, defendants cited MCR 2.504 and argued that the trial court had express authority to dismiss plaintiffs' complaint. Defendants further requested as relief that "[t]he Plaintiffs' case be dismissed under MCR 2.504 for their repeated refusal to follow this Court's orders." Simply put, defendants requested dismissal of plaintiffs' case, and the trial court then dismissed plaintiffs' case. We reject plaintiffs' argument that they received no notice that their claims against Davis might also be dismissed and that the trial court raised this issue sua sponte.

Further, we are not persuaded that the trial court's decision to not allow plaintiffs to seek damages against Davis, when plaintiffs were deliberately violating the court's other orders, fell outside the range of reasonable outcomes. The trial court stated that its rationale for dismissing plaintiffs' claims against Davis was that plaintiffs could not proceed against a third party while plaintiffs willfully refused to comply with the court's orders. The court's inherent power to dismiss a case is rooted in the clean-hands doctrine, and by the time the court dismissed the case, plaintiffs had unclean hands.

## IV. CONCLUSION

The trial court did not abuse its discretion or otherwise err by dismissing plaintiffs' case.[3] We affirm.

/s/ Michael J. Riordan
/s/ Christopher P. Yates
/s/ Matthew S. Ackerman

---

[3] This renders the remainder of plaintiffs' appellate issues moot. An issue is moot if this Court's decision can have no practical effect on a controversy or it is impossible for this Court to fashion a remedy. *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016). Because the trial court properly dismissed plaintiffs' entire complaint on the basis of plaintiffs' conduct during the case, any potential errors regarding its specific rulings on matters of discovery, summary disposition, and procedure can have no practical effect on this controversy because plaintiffs' entire case was properly dismissed.